# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

MARK SILVESTRI,

       Plaintiff,

       v.

JAMES SMITH, et al.,

       Defendants.
_____

Civil Action No.
14-13137-FDS

## MEMORANDUM AND ORDER ON
## MOTION TO AMEND

**SAYLOR, J.**

      This action arises out of two alleged attacks on a prisoner by corrections officers at the Plymouth County Correctional Facility ("PCCF") in Plymouth, Massachusetts. Plaintiff Mark Silvestri has brought claims for relief under both 42 U.S.C. § 1983 and state tort law. The complaint alleges that defendants, all corrections officers or their supervisors, either participated in or enabled two separate physical attacks against him in July 2011 while he was in pretrial detention at PCCF. He further alleges that the attacks were motivated by an illegitimate purpose—specifically, defendants' friendship or acquaintance with a police detective that Silvestri had accused of acting corruptly.

      On January 12, 2015, plaintiff—who had recently obtained counsel after initially filing *pro se*—moved to file a second amended complaint. Defendants oppose the proposed second amended complaint in part, as they contend that Counts 1, 5, 7 through 10, and 12 do not state a claim upon which relief can be granted and thus amendment of the complaint as to those counts would be futile. They also contend that Count 11, which alleges intentional infliction of

emotional distress as to all defendants, likewise does not state a claim upon which relief can be granted as to defendant Briggs and therefore amendment would be futile.

For the reasons stated below, plaintiff's motion to amend the complaint will be granted in part and denied in part.

**I.     Background**

    **A.     Factual Background**

Unless otherwise stated, the following facts are presented as stated in the proposed second amended complaint.[1]

On or about March 4, 2010, Mark Silvestri became involved in an argument with Elizabeth Delaney, his girlfriend at the time. (Proposed 2d Am. Compl. ¶ 17). Following the argument, Delaney contacted Brockton Police Detective Ernest Bell, whom Delaney knew personally. (*Id.* ¶ 18). After inviting Delaney to his house, Detective Bell convinced her to seek an emergency restraining order against Silvestri based (according to the complaint) upon false allegations that he had threatened and physically assaulted her. (*Id.* ¶¶ 18-19). On March 5, 2010, Delaney filed for such a restraining order; it was granted shortly thereafter, and an arrest warrant for Silvestri was issued. (*Id.* ¶ 19).

On March 8, 2010, Delaney recanted her allegations, stating in an affidavit that Silvestri did not assault, threaten, or kidnap her. (*Id.* ¶ 20). Delaney also informed Silvestri that Detective Bell had persuaded her to make the false accusations against him. (*Id.*).

Also on March 8, 2010, Silvestri was arraigned in Brockton District Court on charges of kidnapping, assault and battery, assault with a dangerous weapon, intimidation of a witness, and

---

[1] As defendants oppose plaintiff's motion to amend on futility grounds, the factual allegations made in the proposed second amended complaint are those pertinent to the motion.

2

threats. (*Id.* ¶ 21). Following his arraignment, Silvestri was detained at PCCF. (*Id.* ¶ 22). From March 2010 until January 2011, Silvestri was housed in protective custody at PCCF; in January 2011, he was transferred to the general population. (*Id.* ¶ 25).

During his pretrial detention, Silvestri took an active role in investigating the factual circumstances surrounding the pending charges against him, in an effort to prove that the allegations against him had been falsified at Detective Bell's direction. (*Id.* ¶ 23). Both inmates and staff at PCCF were aware of Silvestri's ongoing investigative efforts. (*Id.* ¶ 24). According to the complaint, because Detective Bell had friends and acquaintances among both the inmates and the staff, Silvestri feared that their knowledge of his investigation could represent a threat to his own safety. (*Id.* ¶ 26).

According to the complaint, during the time he was detained at PCCF, Silvestri received verbal threats, including threats of physical violence, from "many" correctional officers. (*Id.* ¶ 28). At least some of the threats included references to Detective Bell. (*Id.*).

In March 2011, the court presiding over Silvestri's pending criminal matter ordered the seizure of Delaney's cell phone and the preservation of the cell phone records of both Delaney and Detective Bell for the period from December 1, 2009, through March 1, 2011. (*Id.*). According to the complaint, those records contained text messages between Delaney and Detective Bell, as well as GPS information, that would have proved Detective Bell's involvement in convincing Delaney to make false accusations against Silvestri. (*Id.*).

On July 2, 2011, Silvestri was assaulted while he was sleeping in his cell at PCCF. (*Id.* ¶ 30). He does not remember the assault or the identity of his assailant or assailants. (*Id.*). He woke up after the attack with multiple facial injuries, including injuries to both eyes, both

3

cheeks, both sides of his jaw, and his nose. (*Id.* ¶ 31). A CT scan at Jordan Hospital, performed on July 2, 2011, revealed that he had suffered multiple facial fractures—including a left maxillary fracture, a medial orbital wall fracture, and an orbital floor fracture—as well as septal deviation. (*Id.* ¶ 32). Those injuries caused him severe pain. (*Id.* ¶ 33).

After returning to PCCF from the hospital, Silvestri's concern for his safety increased. (*Id.* ¶ 34). Fearing a further assault, he attempted to spend as much time as possible in sections of PCCF that were under video surveillance. (*Id.*).

On July 6, 2011, apparently in an effort to "secure video surveillance and a transfer out of his unit," Silvestri indicated that he planned to go on a hunger strike. (*Id.* ¶ 35). As a result, he was informed that he was to be transferred to booking and placed on mental-health watch. (*Id.*).[2]

On July 6, defendant Joseph Briggs, a correctional officer at PCCF, escorted Silvestri to booking. (*Id.* ¶¶ 7, 37). Silvestri was handcuffed behind his back and wore ankle restraints. (*Id.*). During the walk, Briggs allegedly told Silvestri that he was friends with Detective Bell, that he knew Silvestri was trying to expose police corruption, and that he was going to make sure Silvestri never made it home. (*Id.* ¶ 40). He also allegedly told Silvestri that he was going to "re-break his face." (*Id.* ¶ 41).

According to the complaint, while in an area not subject to video surveillance, Briggs suddenly grabbed Silvestri and slammed him to the ground with severe force. (*Id.* ¶¶ 38, 42).[3]

---

[2] According to the proposed second amended complaint, a hunger strike typically does not result in the placement of an inmate on mental-health watch. (Proposed 2d Am. Compl. at 36). Under normal procedures, an inmate threatening a hunger strike is allowed to stay in his cell for approximately three days before being transferred to the medical unit. (*Id.*).

[3] As of July 6, 2011, Silvestri was housed in an area called G-unit, which comprises four sections that branch off from a central area known as the "bay." (*Id.* ¶ 38). The alleged attack by defendant Briggs took place in the bay. (*Id.* ¶ 42).

4

He then twisted Silvestri's broken nose and smashed his face against the concrete floor several times. (*Id.* ¶ 42). The attack lasted several minutes and caused Silvestri extreme pain, in part because it re-aggravated the facial injuries he had suffered four days earlier. (*Id.* ¶¶ 43-45). Those injuries were plainly visible at the time of the Briggs attack on July 6, 2011. (*Id.* ¶ 45). The Briggs attack exacerbated Silvestri's facial injuries and caused him further disfigurement. (*Id.* ¶ 48).

On July 15, 2011, Silvestri underwent surgery at Tufts Medical Center to repair his displaced nasal fracture. (*Id.* ¶ 49). The surgery resulted in a tangible improvement in his facial structure. (*Id.*).

According to the complaint, the July 6 attack increased Silvestri's level of fear for his safety, as he feared another attack by Briggs or other officers associated with Detective Bell. (*Id.* ¶ 50). On July 16, 2011, he wrote a letter to Brian Gillen, the Superintendent of PCCF, describing the July 6 attack and his concerns and requesting a transfer to a different facility. (*Id.* ¶¶ 12, 52).[4] On July 18, 2011, he filed a grievance with PCCF in which he described the July 6 attack. (*Id.* ¶ 53). In the same general time period, Silvestri allegedly spoke with Gillen personally, at which time he reiterated his concerns and the transfer request he had made in the letter. (*Id.* ¶ 54). Silvestri's attorneys also made several attempts to contact PCCF staff in an effort to secure Silvestri's transfer. (*Id.* ¶ 51). Gillen did not transfer Silvestri to a different facility or provide him with any additional protection. (*Id.* ¶ 55).

On July 29, 2011, Silvestri was informed by PCCF staff that he would be escorted from

---

[4] Defendants, in their filings, refer to the superintendent as "Brian Gillen," not "Brian Gillan." Although the proposed second amended complaint refers to him as "Brian Gillan," the Court will adopt what is presumably the correct spelling for purposes of this memorandum.

5

his cell to a dental appointment at PCCF. (*Id.* ¶ 56). While being escorted to the appointment on that same day, Silvestri was restrained with handcuffed and ankle restraints. (*Id.* ¶ 57). After reaching the "bay" (the area without video surveillance), defendants George Kelsch, James Smith, and Patrick Kelly—all correctional officers at PCCF—allegedly ordered Silvestri to sit on a table in the bay. (*Id.* ¶¶ 3, 8-10, 58-59). According to the complaint, it was unusual for three correctional officers to be present for an escort. (*Id.* ¶ 59).

While Silvestri was seated on the table in the bay, Kelsch, Smith, and Kelly made several adjustments to his handcuffs—moving them from his back to his front, and then again to his back. (*Id.* ¶ 60). According to the complaint, they also made comments concerning Delaney and Detective Bell. Kelly allegedly stated, "Ernie Bell sends his welcome," that Bell had "fucked [Silvestri's] girlfriend' and that her "vagina is nasty." (*Id.* ¶ 61). According to the complaint, when Silvestri began to respond, Kelsch, Smith, and Kelly grabbed him, threw him off the table, and started beating him. (*Id.* ¶ 62). They allegedly punched his face repeatedly and smashed his face into the concrete floor, breaking his nose again. (*Id.* ¶ 63). They then allegedly snapped his broken nose back and forth, causing him severe pain and suffering. (*Id.* ¶ 64). Throughout the attack, Captain Mark Holmes was present but did not intervene or attempt to stop the attack or assist Silvestri. (*Id.* ¶¶ 3, 11, 65).

According to the complaint, after several minutes, Kelsch, Smith, and Kelly temporarily ceased the attack, removed Silvestri's handcuffs, and challenged him to fight them. (*Id.* ¶ 66). Silvestri did not respond, and instead began dragging himself toward the door of the bay in an effort to seek help. (*Id.* ¶¶ 66-67). According to the complaint, at the encouragement of defendant Holmes, Kelsch, Smith, and Kelly handcuffed Silvestri again and resumed beating

him.  (*Id.* ¶ 67).  At one point, Kelsch placed Silvestri in a chokehold from behind.  (*Id.* ¶ 68).
The hold had the effect of crushing his windpipe, causing him to fear for his life because he
could not breathe.  (*Id.*).  According to the complaint, Silvestri did not offer any physical
resistance at any time during the July 29 attack.  (*Id.* ¶ 70).

Later on the same day as the attack, or shortly thereafter, Silvestri received medical
attention for the injuries that had resulted from the attack.  (*Id.* ¶ 71).  PCCF medical staff noted
that his nose appeared unaligned, and that his face was bruised and swollen.  (*Id.*).

Following the July 29 attack, Silvestri began a hunger strike.  (*Id.* ¶ 75).  According to
the proposed second amended complaint, his goal was to ensure his safety by securing a transfer
to the medical unit, which was under constant video surveillance.  (*Id.*).  On August 4, 2011,
Silvestri was transferred to Billerica House of Correction and Jail ("BHOC") for observation;
according to the proposed second amended complaint, the transfer was made as a result of his
hunger strike.  (*Id.* ¶ 76).  He resided at BHOC for four weeks; during that time, BHOC staff
allegedly noted that he acted in a pleasant and respectful manner.  (*Id.* ¶ 77).

On August 26, 2011, Silvestri underwent a CT scan of his face.  (*Id.* ¶ 72).  A doctor at
Tufts Medical Center read the results from the scan and diagnosed a second nasal fracture and
septal deviation, as well as nondisplaced left zygomaticomaxillary complex and orbital fractures.
(*Id.*).

On September 1, 2011, Silvestri was transferred back to PCCF.  (*Id.* ¶ 78).  Shortly
thereafter, he was transferred to a different detention facility in Cambridge.  (*Id.*).  He was not
involved in any further altercations with prison staff after his transfer out of PCCF.  (*Id.*).

On October 28, 2011, the Commonwealth of Massachusetts moved to dismiss the

7

criminal charges that were pending against Silvestri. (*Id.* ¶ 79). In its motion, the Commonwealth stated that Delaney planned to exercise her Fifth Amendment right against self-incrimination if called to testify, and that the Commonwealth had determined it could not prove its case. (*Id.*). The court granted the Commonwealth's motion to dismiss the matter. (*Id.* ¶ 79).

According to the proposed second amended complaint, Silvestri to this day continues to suffer from a bilateral deviated septum, sinus pain, difficulty breathing, respiratory problems, and acid reflux. (*Id.* ¶ 74). He also suffers from nightmares and post-traumatic stress disorder, as well as continued fears of retaliation from law enforcement. (*Id.*).

### B. **Procedural Background**

Silvestri initially filed his complaint *pro se* on July 25, 2014, along with a motion for leave to proceed *in forma pauperis*. That complaint named Smith, Kelly, Kelsch, Briggs, Holmes, Superintendent Gillen, Lieutenant Kuzia, Lieutenant Duncan Seaman, and Sheriff Joseph McDonald as defendants. On September 3, 2014, the Court granted the motion to proceed *in forma pauperis*, but directed summonses to issue against only defendants Smith, Kelly, Kelsch, and Briggs. The Court found that the initial complaint did not contain sufficient factual allegations against the other five named defendants, and directed Silvestri to file an amended complaint within 35 days if he wished to pursue claims against those defendants.

On October 8, 2014, Silvestri filed an amended complaint, naming Smith, Kelly, Kelsch, Briggs, Holmes, Gillen, and McDonald (but not Kuzia or Seaman) as defendants. On October 28, 2014, defendants Smith, Kelly, Kelsch, and Briggs moved to dismiss the amended complaint on the ground that they were immune from suit in their official capacity.

On December 1, 2014, Silvestri filed a motion for appointment of counsel. On December

16, 2014, before the motion was formally addressed, plaintiff obtained counsel.  On January 12, 2015, through his newly-acquired counsel, Silvestri moved for leave to file a second amended complaint.  The proposed second amended complaint names Smith, Kelly, Kelsch, Briggs, Holmes, and Gillen (but not McDonald, Kuzia, or Seaman) as defendants.  It alleges claims against defendants only in their individual capacities.

Count 1 of the proposed second amended complaint alleges that defendant Briggs violated Silvestri's right to substantive due process under the Fourteenth Amendment.  Count 2 makes the same allegation against defendants Kelsch, Smith, and Kelly; Count 3 makes the same allegation against defendant Holmes; and Count 4 makes the same allegation against defendant Gillen.  Count 5 alleges assault and battery against defendant Briggs, and Count 6 makes the same allegation against defendants Kelsch, Smith, and Kelly.  Count 7 alleges negligence against all defendants.  Count 8 alleges wanton and reckless conduct against defendant Briggs, Count 9 makes the same allegation against defendants Kelsch, Smith, and Kelly, and Count 10 makes the same allegation against defendant Holmes.  Counts 11 and 12 allege intentional infliction of emotional distress and negligent infliction of emotional distress, respectively, against all defendants.

Defendants oppose the proposed amendment in part.  They contend that all allegations against defendant Briggs (as contained in Counts 1, 5, and 7 through 12) are futile, because they are barred by the statute of limitations.  They further contend that Counts 7 through 10 and 12 are futile as to all defendants, because defendants are immune from claims arising from allegedly negligent or reckless conduct that occurred while they were acting within the scope of their employment.  *See* Mass. Gen. Laws ch. 258 § 2.  In sum, they contend that Counts 1, 5, 7

9

through 10, and 12 fail to state claims upon which relief can be granted and are thus futile in their entirety. They further contend that Count 11—which alleges intentional infliction of emotional distress on the part of all defendants—is futile in part, because it does not state a claim upon which relief can be granted as to defendant Briggs.

## II.     Legal Standard

Fed. R. Civ. P. 15 provides that a party may amend its pleading only under limited circumstances. If the pleading is one to which a responsive pleading is required, a party may amend its pleading as a matter of course within 21 days of the service of the responsive pleading or service of a motion under Fed. R. Civ. P. 12, whichever is earlier. Fed. R. Civ. P. 15(1)(B). After that time, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether to grant a motion to amend, the Court must "examine the totality of the circumstances and . . . exercise its informed discretion in constructing a balance of pertinent considerations. *Palmer v. Champion Mortg.*, 465 F.3d 24, 30-31 (1st Cir. 2006)). However, leave to amend may be denied for several reasons, including, *inter alia*, "futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009)).

When considering an opposition to a motion to amend on the grounds that amending the complaint would be futile, the Court must apply the standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Kenney v. State Street Corp.*, 2011 WL 4344452, at *2 (D. Mass. Sept. 15, 2011); *Hatch v. Dep't for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). Whether a complaint should survive a motion to dismiss thus depends upon whether the pleading satisfies the "plausibility" standard set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A claim is plausible on its face if it raises a right to relief beyond a speculative level by pleading enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And, while the Court will generally accept all well-pleaded factual allegations in a complaint as true and draw all reasonable inferences in a plaintiff's favor, *id.*, the Court will disregard any "legal conclusion[s] couched as . . . fact" or "[t]hreadbare recitals of the elements of a cause of action." *Ocasio-Hernadez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678."

### III. <u>Analysis</u>

Defendants essentially contend that two categories of claims are futile: those against defendant Briggs, and those claiming liability against any defendant (including defendant Briggs) for negligence or wanton or reckless conduct. The Court will consider each of those categories in turn.

#### A. <u>Claims Against Defendant Briggs</u>

Defendant contends that all claims against defendant Briggs are futile because the three-year limitations period had expired as to those claims prior to the filing of the initial complaint. "It is well established that affirmative defenses, such as [a statute of limitations defense] may be raised in a motion to dismiss an action for failure to state a claim." *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001) (citing *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998) (addressing a motion to dismiss based on a statute of limitations defense)). "However, it is equally well settled that, for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear 'on the face of the plaintiff's

11

pleadings.'" *Id.* (quoting *Aldahonda-Rivera v. Parke Davis & Co.*, 882 F.2d 590, 591 (1st Cir. 1989). A court may grant a motion to dismiss based on the statute of limitations "[w]here the dates included in the complaint show that the limitations period has been exceeded and the complaint fails to 'sketch a factual predicate' that would warrant the application of either a different statute of limitations period or equitable estoppel." *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). However, the court's "review of the complaint . . . must 'leave no doubt' that the plaintiff's action is barred by the asserted defense" for dismissal to be warranted. *Id.* (quoting *LaChapelle*, 142 F.3d at 509).

Because 42 U.S.C. § 1983 does not contain a built-in statute of limitations, "a federal court called upon to adjudicate a section 1983 claim ordinarily must borrow the forum state's limitation period governing personal injury causes of action." *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Accordingly, in Section 1983 actions arising in Massachusetts, the First Circuit has applied the three-year statute of limitations imposed by Massachusetts in personal injury actions. *Id.*; Mass. Gen. Laws ch. 260 § 2A ("Except as otherwise provided, actions of tort . . . shall be commenced only within three years next after the cause of action accrues."). The parties here appear to agree that a three-year statute of limitations applies to all of plaintiff's claims, including those against defendant Briggs.

According to the proposed second amended complaint, the alleged attack by Briggs took place on July 6, 2011. Absent "rare and exotic circumstances," claims arising from a case of physical abuse accrue at the moment they occur, because a plaintiff "had ample reason to know of the injury then and there." *Nieves*, 241 F.3d at 52. Here, the parties appear to agree that all claims against defendant Briggs accrued on July 6, 2011. The initial complaint was filed, *pro se*,

12

on July 25, 2014; thus, defendants contend, the limitations period as to claims against Briggs had expired nineteen days prior to the filing of the complaint.

Silvestri contends that the limitations period did not expire because it was tolled during the time he spent exhausting the administrative remedies available to him at PCCF. Prisoners are required, pursuant to the Prison Litigation Reform Act ("PLRA"), to exhaust all available administrative remedies prior to bringing suit. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 739-41 (2001). The rule applies to all levels of the prison grievance process, including any optional appeals. *See Johnson v. Thyng*, 369 Fed. App'x 144, 147-48 (1st Cir. 2010). In accordance with that requirement, a number of courts have held that "a plaintiff is entitled to equitable tolling of the statute of limitations for time spent exhausting administrative remedies." *Dillon v. Dickhaut*, No. 12-10713, 2013 WL 2304175, at *4 (D. Mass. May 24, 2013); *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011); *Brown v. Valoff*, 422 F.3d 926, 942-43 (9th Cir. 2005); *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2011); *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000); *Harris v. Hegmann*, 198 F.3d 153, 158 (5th Cir. 1999). The purpose of that tolling doctrine is to avoid putting prisoners in a "catch-22" wherein "the prisoner who files suit . . . prior to exhausting administrative remedies [would] risk[] dismissal based upon § 1997e; whereas the prisoner who waits to exhaust his administrative remedies [would] risk[] dismissal based upon untimeliness." *Johnson*, 272 F.3d at 522. "Furthermore, any other interpretation of the PLRA could 'permit [prison officials] to exploit the exhaustion requirement through indefinite delay in responding to grievances.' *Gonzalez*, 651 F.3d 318 at 323 (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

Because the initial complaint was filed three years and nineteen days after the alleged

Briggs attack, any tolling of the statute of limitations would have to total at least nineteen days for the claims against Briggs to be timely. The proposed second amended complaint alleges that Silvestri filed a grievance with PCCF on or about July 18, 2011. (Proposed 2d Am. Compl. ¶ 53). There are no additional facts concerning any other steps in the grievance process, or how long the process took to resolve. It is thus unclear whether the administrative process took longer than nineteen days.

Silvestri's claims against Briggs may, in fact, be time-barred. However, the Court cannot say that the allegations "'leave no doubt' that the plaintiff's action is barred" by the statute of limitations. *Blackstone Realty LLC*, 244 F.3d at 197 (quoting *LaChapelle*, 142 F.3d at 509). By pleading that Silvestri filed a grievance, the proposed second amended complaint "sketch[es] a factual predicate" that could warrant the application of equitable estoppel. *See LaChapelle*, 142 F.3d at 510. For that reason, dismissal on the basis of the statute of limitations is not appropriate at this stage. *See Dillon*, 2013 WL 2304175, at *5 ("[T]he Court is not presented with sufficient facts to determine when Dillon's administrative remedies were finally exhausted. . . . While it may very well be that Dillon's claims are in fact time barred, . . . Dillon's claim should not be dismissed as time barred at this point in the proceedings.").[5]

Accordingly, the claims against defendant Briggs—as contained in Counts 1, 5, and 7 through 12—are not clearly barred by the statute of limitations, and amendment is not futile on

---

[5] Defendants cite to *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, for the proposition that "[w]here it appears from the dates and facts recounted in the complaint that the statute of limitations has run, the plaintiff has an affirmative burden to plead *in its complaint* the facts required to establish estoppel." 524 F.3d 315, 325-26 (1st Cir. 2008) (emphasis in original). However, the court in *Trans-Spec* did not specify the quantum of facts required at the motion to dismiss stage, because the plaintiff in that case alleged no relevant facts at all. *Id.* Moreover, the court cited *Blackstone* multiple times and gave no hint of overruling its holding that an affirmative defense should only lead to dismissal under a 12(b)(6) standard if the complaint can be said to "'leave no doubt' that the plaintiff's action is barred by the asserted defense." *See Trans-Spec*, 524 F.3d at 320; *Blackstone Realty LLC v. FDIC*, 244 F.3d 193, 197 (1st Cir. 2001). The Court declines defendants' invitation to read such a reversal into *Trans-Spec*.

that ground.

### B. Claims for Negligence or Wanton or Reckless Conduct

Defendants contend that Count 7 (for negligence); Counts 8, 9, and 10 (for wanton and reckless conduct); and Count 12 (for negligent infliction of emotional distress) are futile, because they attempt to allege claims against public employees based on negligent, wanton, or reckless conduct. Under Mass. Gen. Laws ch. 258 § 2, "no . . . public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . . ." "For purposes of [Mass. Gen. Laws ch.] 258, recklessness is considered negligent, rather than intentional, conduct." *Parker v. Chief Justice for Admin. & Mgmt. of Trial Court*, 67 Mass. App. Ct. 174, 180 (2006). Silvestri does not appear to contest that all defendants were public employees at the time of their alleged wrongful conduct, or that Mass. Gen. Laws ch. 258 § 2 extends to claims for wanton and reckless conduct; rather, he contends that defendants were not "acting within the scope of [their] employment" when they committed the acts giving rise to this action. *See* Mass. Gen. Laws ch. 258 § 2.

When determining whether an employee was "acting within the scope of his office or employment," Massachusetts courts have looked to common law. *Clickner v. City of Lowell*, 422 Mass. 539, 542 (1996). "The common law test considers whether the act was in furtherance of the employer's work." *Id.* "Factors to be considered include whether the conduct in question is of the kind the employee is hired to perform, whether it occurs within authorized time and space limits, and whether it is motivated, at least in part, by a purpose to serve the employer." *Id.* "The scope of an employee's employment is not construed restrictively." *Howard v. Town*

15

*of Burlington*, 399 Mass. 585, 590 (1987).

Because the factors of the common-law test apply somewhat differently to different individual defendants, the Court will consider them in four separate groups: defendant Briggs; defendants Kelsch, Smith, and Kelly; defendant Holmes; and defendant Gillen.

### 1. **Defendant Briggs**

Defendant Briggs is alleged to have attacked Silvestri on July 6, 2011, without provocation and while Silvestri was wearing handcuffs and ankle restraints. (Proposed 2d Am. Compl. ¶¶ 35, 42-43, 46). The proposed second amended complaint alleges that Briggs "suddenly grabbed [Silvestri] and slammed him to the ground with severe force. Defendant Briggs then twisted [Silvestri's] broken nose, and smashed his face against the concrete floor several times." (*Id.* ¶ 42). It further alleges that, immediately prior to the attack, "Briggs made statements indicating he was friends with Detective Bell, that he knew [Silvestri] was trying to expose police corruption, and that he was going to make sure [Silvestri] never made it home." (*Id.* ¶ 40).

Taking all of those facts to be true, Briggs cannot be said to have been acting within the scope of his employment when he attacked Silvestri. Though the attack "occur[red] within authorized time and space limits" and *may* have been "motivated, at least in part, by a purpose to serve the employer", the conduct alleged—a retaliatory attack on a defenseless prisoner—is very far removed from any that Briggs was "hired to perform." *See Clickner*, 422 Mass. at 542.

Accordingly, the allegations against defendant Briggs are not barred by Mass. Gen. Laws ch. 258 § 2. Amendment is therefore not futile with respect to those claims.

### 2. Defendants Kelsch, Smith, and Kelly

Like defendant Briggs, defendants Kelsch, Smith, and Kelly are alleged to have attacked Silvestri without provocation and while he was handcuffed and wearing ankle restraints. (Proposed 2d Am. Compl. ¶¶ 62-63, 70). According to the proposed second amended complaint, they "punched [Silvestri's] face repeatedly, smashed his face into the concrete floor, and rebroke his nose," before "proceed[ing] to snap [Silvestri's] broken nose back and forth, causing severe pain and suffering." (*Id.* ¶¶ 63-64). The proposed second amended complaint also alleges that the three defendants "each made several comments to [Silvestri] regarding Detective Bell and Ms. Delaney. Specifically, Defendant Kelly stated 'Ernie Bell sends his welcome' and that Detective Bell had 'fucked [Silvestri's] girlfriend' and her 'vagina is nasty.'" (*Id.* ¶ 61).

Taking those allegations to be true, defendants Kelsch, Smith, and Kelly also cannot be said to have been acting within the scope of their employment during the alleged July 29, 2011 attack. They allegedly attacked Silvestri at a time when he was physically restrained, defenseless, and not belligerent. They also were allegedly motivated by an illegitimate purpose—namely, to retaliate on behalf of Detective Bell for Silvestri's efforts to expose his allegedly corrupt acts. An attack under those circumstances is not the sort of conduct that defendants were "hired to perform." *See Clickner*, 422 Mass. at 542.

Accordingly, the allegations against defendants Kelsch, Smith, and Kelly are not barred by Mass. Gen. Laws ch. 258 § 2. Amendment is therefore not futile with respect to those claims.

### 3. Defendant Holmes

The only allegations made against defendant Holmes are that he was present during the attack by defendants Kelsch, Smith, and Kelly, but "did not intervene, attempt to assist

[Silvestri], or attempt to stop" the attack, and that he then encouraged them to re-handcuff Silvestri and resume beating him after they had temporarily ceased and he was attempting to escape. (Proposed 2d Am. Compl. ¶ 65, 67). No allegations directly connect him to Detective Bell or any retaliatory motive. On that basis, defendants contend that the allegations against him do not establish that he acted for any improper purpose. Moreover, defendants contend that the allegations describe Holmes supervising his subordinate officers, exactly the task he was "hired to perform" as a captain. *See Clickner*, 422 Mass. at 542.

Although Captain Holmes's alleged misconduct is not as egregious as that of defendants Kelsch, Smith, Kelly, or Briggs, the Court cannot conclude that it fell completely within the scope of his employment. Defendants are correct that supervising subordinate officers was the work that Holmes was "hired to perform"; however, encouraging those officers to resume an unprovoked attack of a "docile" inmate who was "dragging himself toward the door of the bay in an effort to seek help" after the officers had punched him "repeatedly," "smashed his face into the concrete floor," "rebroke his nose," and "snap[ped his] broken nose back and forth," cannot have been work that he was "hired to perform." (*See* Proposed 2d Am. Compl. ¶¶ 63-64, 66-67).

Accordingly, the allegations against defendant Holmes are not barred by Mass. Gen. Laws ch. 258 § 2. Amendment is therefore not futile with respect to those claims.

### 4. **Defendant Gillen**

The allegations against Superintendent Gillen are that he failed to transfer Silvestri to a different facility or provide "any additional protection" for him, despite Silvestri's multiple efforts to describe the attack by Briggs and to communicate his fears of a future attack by prison

staff. (*Id.* ¶¶ 52, 54-55). Silvestri contends that this is sufficient to establish liability, because he "was aware of the July 6 assault and yet knowingly failed to address the danger [Silvestri] faced or prevent further assaults. As pleaded, this conduct is clearly beyond the type of action [he was] hired to perform." (Pl.'s Reply at 4).

Despite Silvestri's characterization, the allegations against defendant Gillen appear to describe conduct that fits squarely within the scope of his employment. The superintendent of a prison undoubtedly fields a substantial number of transfer requests from inmates, many of whom likely provide compelling justifications. Determining whether or not to grant those requests, or to provide extra protection to an inmate who fears for his own safety, is the type of task such a supervisory official would be "hired to perform." *See Clickner*, 422 Mass. at 542. Denying such a request, even negligently or recklessly, is thus an act made within the scope of employment.

Accordingly, the allegations against defendant Gillen in Counts 7 through 10 and 12 of the proposed amended complaint—alleging negligent or wanton and reckless conduct—are barred by Mass. Gen. Laws ch. 258 § 2. Amendment would therefore be futile with respect to those claims.

## IV.    Conclusion

For the foregoing reasons, plaintiff's motion for leave to amend the complaint is DENIED as to the claims against defendant Gillen as set forth in Counts 7 through 10 and 12. It is otherwise GRANTED. Plaintiff shall file an amended complaint consistent with this opinion by April 24, 2015.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
Dated: April 17, 2015                    United States District Judge