UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

MARK SILVESTRI
       Plaintiff,

v.

OFFICERS JAMES SMITH, PATRICK KELLY, GEORGE KELSCH, JOSEPH BRIGGS, and CAPTAIN MARK HOLMES,
       Defendants.

Civil Action No. 14-13137-FDS

## SECOND AMENDED COMPLAINT

Kelly M. Husid (BBO# 684516)
Brian C. Devine (BBO# 672233)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel.: 617.570.1000
Fax: 617.523.1231
KHusid@goodwinprocter.com
BDevine@goodwinprocter.com

*Attorneys for Plaintiff*

Plaintiff Mark Silvestri ("Plaintiff" or "Mr. Silvestri"), by and through his attorneys, hereby alleges as follows:

## INTRODUCTION

1. This case concerns two separate assaults by correctional officers against Plaintiff Mark Silvestri, a pretrial detainee whose pending charges were eventually dismissed. These assaults were in apparent retaliation for Plaintiff's work to expose potential corruption by law enforcement, or in an effort to discourage him from pursuing his investigation of law enforcement.

2. As a result of these assaults, Plaintiff suffered two separate broken noses, multiple other facial injuries, and severe emotional distress, including post-traumatic stress disorder and continued fear of retaliation by law enforcement.

3. Plaintiff was incarcerated at Plymouth County Correctional Facility ("PCCF"), at the mercy of the correctional officers and supervisors presiding over his daily activities, including Defendants James Smith ("Smith"), Patrick Kelly ("Kelly"), George Kelsch ("Kelsch"), Joseph Briggs ("Briggs"), and Mark Holmes ("Holmes"), when Defendants violated his rights by assaulting and battering him on multiple occasions, or failing to intervene or prevent Mr. Silvestri's assault and battery, in an effort to discourage Mr. Silvestri from investigating the facts surrounding his pending criminal case, which was ultimately dismissed. Plaintiff brings claims under 42 U.S.C. § 1983 for deprivation of rights secured by the Fourteenth Amendment to the United States Constitution, and separately for assault and battery, negligence, wanton or reckless conduct, intentional infliction of emotional distress, and negligent infliction of emotional distress.

## THE PARTIES

4. Plaintiff Mark Silvestri was in pretrial detention at PCCF, 26 Long Pond Road, Plymouth, MA 02360 at all times relevant to the allegations in this Second Amended Complaint.

5. Mr. Silvestri was arrested in March, 2010, and spent one year and eight months in pretrial detention before the case against him was ultimately dismissed in November, 2011, due in part to the factual investigation Mr. Silvestri engaged in while detained at PCCF.

6. Plaintiff is currently a resident of the Commonwealth of Massachusetts and engaged in temporary work for various companies in the area.

7. Defendant Briggs is, upon information and belief, a resident of Massachusetts. At all relevant times, Briggs was a correctional officer employed at PCCF. Plaintiff brings suit against Briggs in his individual capacity.

8. Defendant Kelsch is, upon information and belief, a resident of Massachusetts. At all relevant times, Kelsch was a correctional officer employed at PCCF. Plaintiff brings suit against Kelsch in his individual capacity.

9. Defendant Smith is, upon information and belief, a resident of Massachusetts. At all relevant times, Smith was a correctional officer employed at PCCF. Plaintiff brings suit against Smith in his individual capacity.

10. Defendant Kelly is, upon information and belief, a resident of Massachusetts. At all relevant times, Kelly was a correctional officer employed at PCCF. Plaintiff brings suit against Kelly in his individual capacity.

11. Defendant Holmes is, upon information and belief, a resident of Massachusetts. At all relevant times, Holmes was a Captain employed at PCCF. Plaintiff brings suit against Holmes in his individual capacity.

12. Defendants are sued in their individual capacities only. At all relevant times, all Defendants were acting or failing to act under the color of law.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1988, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14. This Court has personal jurisdiction over the Defendants because, upon information and belief, they are residents of Massachusetts.

15. Venue in this district is proper under 28 U.S.C. § 1391(b)(1)-(2) because the Defendants reside within this district, and a substantial part of the events or omissions giving rise to the claim occurred within this district.

## FACTS

16. On or about March 4, 2010, Mr. Silvestri was involved in an argument with his girlfriend at the time, Elizabeth Delaney.

17. Following the argument, Ms. Delaney contacted Brockton Police Detective Ernest Bell, whom Ms. Delaney knew personally. Detective Bell asked Ms. Delaney to come to his house.

18. Upon information and belief, Detective Bell then convinced Ms. Delaney to seek an emergency restraining order against Mr. Silvestri based upon false allegations that Mr. Silvestri had threatened her and physically assaulted her, which she did on March 5, 2010. The emergency restraining order was granted, and an arrest warrant was issued for Mr. Silvestri based on Ms. Delaney's false allegations.

19. Ms. Delaney subsequently recanted her allegations and stated in an affidavit dated March 8, 2010 that Mr. Silvestri did not assault, threaten, or kidnap her. Ms. Delaney also later informed Mr. Silvestri that Detective Bell had convinced her to make these false allegations.

20. Plaintiff was arraigned on March 8, 2010 in Brockton District Court on charges of kidnapping, assault and battery, assault with a dangerous weapon, intimidation of a witness, and threats.

21. Following his arraignment, Plaintiff was detained at PCCF. At all times relevant to the allegations in this Second Amended Complaint, Plaintiff was confined in pretrial detention at PCCF.

22. While detained at PCCF, Mr. Silvestri was actively involved in investigating the factual circumstances surrounding the charges pending against him, including the role of Detective Bell, in an effort to prove that the allegations against him were falsified at Detective Bell's direction.

23. Mr. Silvestri's work was well-known throughout PCCF, by both inmates and staff.

24. From March 2010 through January 2011, Plaintiff was housed in protective custody at PCCF; however, in January 2011, Mr. Silvestri was transferred to the general population.

25. Throughout the whole time Mr. Silvestri was detained at PCCF, he was fearful for his safety because of his efforts to investigate Detective Bell. Upon information and belief, Detective Bell had friends and acquaintances among both the inmates and staff at PCCF.

26. In July 2011, Plaintiff had been a resident of PCCF, under the oversight of Defendants Briggs, Kelsch, Smith, and Kelly, in their roles as correctional officers, and

Defendant Holmes, in his role as Captain, for approximately one year and four months.

27. Mr. Silvestri received verbal threats from many correctional officers throughout the entire time he was detained at PCCF. These threats included references to Detective Bell and threats of physical violence.

28. On or about March 1, 2011, the court presiding over Mr. Silvestri's case ordered the seizure of Ms. Delaney's cell phone and the preservation of both Ms. Delaney's and Detective Bell's cellular records for the period of December 1, 2009 through March 1, 2011 which, upon information and belief, contained text messages between Ms. Delaney and Detective Bell and GPS information which would have proven Detective Bell's involvement in convincing Ms. Delaney to assert false allegations against Mr. Silvestri. Mr. Silvestri believed this ruling was a crucial step towards proving his innocence.

29. On or about July 2, 2011, Plaintiff was assaulted while he was sleeping in his cell at PCCF. Mr. Silvestri does not remember the assault itself, or who was involved. The identity of Plaintiff's assailant or assailants is still unknown.

30. Following the assault, Mr. Silvestri awoke with multiple facial injuries, including injuries to his right eye, right cheek, nose, left cheek, left eye, right jaw and left jaw, and disfigurement of his face ("July 2 assault").

31. Mr. Silvestri received a CT scan at Jordan Hospital on July 2, 2011, which revealed multiple facial fractures, including a left maxillary fracture, medial orbital wall fracture, and orbital floor fracture, as well as septal deviation.

32. Mr. Silvestri was in severe pain as a consequence of these injuries.

33. After returning to PCCF following the July 2 assault, Mr. Silvestri became even more fearful for his safety. As a result of his fear of further assault, Plaintiff sought

opportunities to ensure he spent as much as time in sections of PCCF which were under video surveillance as possible.

34. In an effort to secure video surveillance and a transfer out of his unit, on or about July 6, 2011, Plaintiff indicated he planned to go on a hunger strike. As a result of these statements, Mr. Silvestri was informed that he was to be transferred to booking and placed on mental health watch, which is outside normal procedures indicated for a hunger strike.

35. Under normal procedure, Plaintiff would have been allowed to stay in his cell for approximately three days while on a hunger strike before being transferred to the medical unit. Typically, a hunger strike does not result in an inmate being placed on mental health watch.

36. Defendant Briggs was tasked with escorting Plaintiff to booking. During the entire time Plaintiff was being escorted, Plaintiff was handcuffed behind his back and wearing ankle restraints.

37. At that time, Mr. Silvestri was being housed in G-unit, which is comprised of four sections, all of which stem off from a central area known as the "bay." There are no cameras located in the bay.

38. Defendant Briggs led Plaintiff to the bay, which is located in the middle of the sections in G-unit.

39. While escorting Plaintiff, Defendant Briggs made statements indicating he was friends with Detective Bell, that he knew Mr. Silvestri was trying to expose police corruption, and that he was going to make sure Mr. Silvestri never made it home.

40. Defendant Briggs also told Mr. Silvestri that he was going to "re-break his face."

41. While in the bay, Defendant Briggs suddenly grabbed Mr. Silvestri and slammed him to the ground with severe force. Defendant Briggs then twisted Plaintiff's broken nose, and

smashed his face against the concrete floor several times ("July 6 assault").

42. Defendant Briggs's attack on Mr. Silvestri lasted several minutes, during which time Defendant Briggs repeatedly slammed Plaintiff's injured face into the concrete floor.

43. At least in part due to the broken nose and orbital fractures Plaintiff suffered during the July 2 assault, Mr. Silvestri was in extreme pain during this attack.

44. Since the July 2 assault had occurred just four days earlier, Mr. Silvestri's injuries were still plainly visible. Defendant Briggs knew, or should have known, of Mr. Silvesteri's previous injuries from the July 2 assault. In addition, Defendant Briggs's statement that he would "re-break [Mr. Silvestri's] face" indicates he was aware of Plaintiff's injuries.

45. Mr. Silvestri was handcuffed and restrained with ankle restraints during this attack, and did not offer any resistance to Defendant Briggs's assault.

46. Defendant Briggs's attack was undertaken maliciously and sadistically to cause Mr. Silvestri harm and further exacerbate his injuries from the July 2 assault. There was no legitimate penal purpose for this assault against Mr. Silvestri.

47. As a result of the July 6 assault, Mr. Silvestri's injuries from the July 2 assault were exacerbated, and his face was further disfigured. These injuries were the direct and proximate result of the July 6 assault.

48. On or about July 15, 2011, Mr. Silvestri received surgery at Tufts Medical Center to repair his displaced nasal fracture. The surgery resulted in an obvious improvement to his facial structure.

49. As a result of the July 6 assault, Mr. Silvestri's fears for his safety were heightened. Plaintiff feared another assault by Defendant Briggs or other correctional officers associated with Detective Bell.

50. Due to Plaintiff's fear for his safety, his attorneys made several attempts to communicate with individuals at PCCF to secure Mr. Silvestri's transfer to another facility.

51. On or about July 18, 2011, Plaintiff filed a grievance with PCCF describing the July 6 assault.

52. On or about July 29, 2011, Mr. Silvestri was informed by PCCF staff that he was to be escorted from his cell to a dental appointment at PCCF.

53. While being escorted to his dental appointment, Mr. Silvestri was handcuffed and restrained with ankle restraints.

54. Plaintiff was again escorted to the bay, an area without video surveillance.

55. After Plaintiff was escorted into the bay, Defendants Kelsch, Smith, and Kelly were present and ordered Mr. Silvestri to sit on a table in the bay. It was unusual for three correctional officers to be present for an escort.

56. Mr. Silvestri remained handcuffed and restrained with ankle restraints during this time. Defendants Kelsch, Smith, and Kelly made several adjustments to Mr. Silvestri's handcuffs while he was sitting on the table, moving them from his back to his front, and then again to his back.

57. At the same time, Defendants Kelsch, Smith, and Kelly each made several comments to Plaintiff regarding Detective Bell and Ms. Delaney. Specifically, Defendant Kelly stated "Ernie Bell sends his welcome" and that Detective Bell had "fucked [Plaintiff's] girlfriend" and her "vagina is nasty."

58. When Plaintiff started to respond, Defendants Kelsch, Smith, and Kelly grabbed Mr. Silvestri, threw him off the table, and started beating him ("July 29 assault").

59. Defendants Kelsch, Smith, and Kelly punched Mr. Silvestri's face repeatedly,

smashed his face into the concrete floor, and rebroke his nose.

60. Defendants Kelsch, Smith, and Kelly then proceeded to snap Mr. Silvestri's broken nose back and forth, causing severe pain and suffering.

61. During the assault, Defendant Holmes was present but did not intervene, attempt to assist Mr. Silvestri, or attempt to stop the assault.

62. After several minutes of beating Mr. Silvestri and severely injuring him, Mr. Silvestri's handcuffs were removed, and Defendants Kelsch, Smith, and Kelly challenged Mr. Silvestri to fight them. Mr. Silvestri did not respond, and instead laid docile.

63. Mr. Silvestri then began dragging himself toward the door of the bay in an effort to seek help. At Defendant Holmes's encouragement, Defendants Kelsch, Smith, and Kelly then handcuffed him again, and resumed beating him.

64. At one point, Defendant Kelsch came up behind Mr. Silvestri and placed him in a chokehold. Defendant Kelsch was crushing Mr. Silvestri's windpipe, and Mr. Silvestri began to fear for his life because he could not get any oxygen into his lungs.

65. Defendants Kelsch, Smith, and Kelly undertook this attack maliciously and sadistically to cause Mr. Silvestri harm and further exacerbate his injuries from the July 2 assault and the July 6 assault. There was no legitimate penal purpose for this assault against Mr. Silvestri.

66. Other than one brief period where Mr. Silvestri was not handcuffed and was lying docile on the ground, Mr. Silvestri was handcuffed and restrained with ankle restraints throughout the whole July 29 assault, which lasted approximately ten minutes. Mr. Silvestri did not offer any resistance at any time.

67. Later in the day on or about July 29, 2011, Mr. Silvestri received medical

attention for his injuries resulting from the assault. PCCF medical staff noted that Mr. Silvestri's nose appeared unaligned, and that his face was bruised and swollen.

68. On or about August 26, 2011, Mr. Silvestri received a CT scan of his face. A doctor at Tufts Medical Center subsequently read the CT scan and diagnosed Mr. Silvestri with a second nasal fracture and septal deviation, as well as nondisplaced left zygomaticomaxillary complex and orbital fractures. These injuries were the direct and proximate result of the assault on July 29, 2011.

69. As a direct and proximate result of the July 6 assault and the July 29 assault, Mr. Silvestri continues to suffer from a bilateral deviated septum, sinus pain, difficulty breathing, respiratory problems, and acid reflux.

70. Also as a direct and proximate result of the July 6 assault and the July 29 assault, Mr. Silvestri suffers from nightmares and post-traumatic stress disorder, as well as continued fears of retaliation from law enforcement.

71. Following the July 29 assault, Mr. Silvestri initiated a hunger strike, in an effort to ensure his safety by being transferred to the medical unit, which was under constant video surveillance.

72. Five days after the assault, on or about August 4, 2011, Plaintiff was transferred to Billerica House of Correction and Jail ("BHOC") for observation, due to his hunger strike.

73. Plaintiff resided at BHOC until September 1, 2011. During this time, BHOC staff noted that Mr. Silvestri was pleasant and respectful to staff.

74. On September 1, 2011, Mr. Silvestri was transferred back to PCCF; however, shortly thereafter, he was transferred to a different detention facility in Cambridge. Plaintiff was not involved in any further altercations with prison staff once he was transferred out of PCCF.

75. On or about October 28, 2011, the Commonwealth moved to dismiss the charges pending against Mr. Silvestri. The Commonwealth stated in its motion that Ms. Delaney planned to exercise her right against self-incrimination under the Fifth Amendment if called to testify, and that the Commonwealth had determined it could not prove its case against Mr. Silvestri. The court subsequently granted the Commonwealth's motion to dismiss.

## CLAIMS FOR RELIEF

### Count One (Against Defendant Briggs)
### Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process

76. Plaintiff hereby re-alleges Paragraphs 1 through 75 as though fully set forth herein.

77. Defendant Briggs violated 42 U.S.C. § 1983 by acting and threatening to act under the color of state law to violate Plaintiff's right as a pretrial detainee to substantive due process, as secured by the Fourteenth Amendment to the Constitution of the United States.

78. Defendant Briggs maliciously and sadistically engaged in excessive force against Plaintiff, without cause or justification, during the July 6 assault.

79. Defendant Briggs's application of force was not made in a good faith effort to maintain or restore discipline.

80. Defendant Briggs's assault caused Mr. Silvestri to suffer serious injuries, including but not limited to, multiple facial fractures and other facial injuries.

81. As a direct and proximate result of Defendant Briggs's actions, Plaintiff suffered the damages described above.

### Count Two (Against Defendants Kelsch, Smith, and Kelly)
### Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process

82. Plaintiff hereby re-alleges Paragraphs 1 through 81 as though fully set forth

herein.

83. Defendants Kelsch, Smith, and Kelly violated 42 U.S.C. § 1983 by acting and threatening to act under the color of state law to violate Plaintiff's right as a pretrial detainee to substantive due process, as secured by the Fourteenth Amendment to the Constitution of the United States.

84. Defendants Kelsch, Smith, and Kelly maliciously and sadistically engaged in excessive force against Plaintiff, without cause or justification, during the July 29 assault.

85. Defendant Kelsch, Smith, and Kelly's application of force was not made in a good faith effort to maintain or restore discipline.

86. Defendant Kelsch, Smith, and Kelly's assault caused Mr. Silvestri to suffer serious injuries, including but not limited to, a displaced nasal fracture and displaced left zygomaticomaxillary complex and orbital fracture.

87. As a direct and proximate result of Defendant Kelsch, Smith, and Kelly's actions, Plaintiff suffered the damages described above.

**Count Three (Against Defendant Holmes)**
**Violation of 42 U.S.C. § 1983 – Fourteenth Amendment Substantive Due Process**

88. Plaintiff hereby re-alleges Paragraphs 1 through 87 as though fully set forth herein.

89. Defendant Holmes violated 42 U.S.C. § 1983 by acting and threatening to act under the color of state law to violate Plaintiff's right as a pretrial detainee to substantive due process, as secured by the Fourteenth Amendment to the Constitution of the United States.

90. Defendant Holmes was present while Defendants Kelsch, Smith, and Kelly maliciously and sadistically engaged in excessive force against Plaintiff, without cause or justification, during the July 29 assault, and yet encouraged the assault, and failed to take any

steps to intervene or prevent the assault.

92. Defendant Holmes's encouragement and failure to intervene caused Mr. Silvestri to suffer serious injuries at the hands of Defendants Kelsch, Smith, and Kelly, including but not limited to, multiple facial fractures and other facial injuries, as described above.

92. As a direct and proximate result of Defendant Holmes's actions, Plaintiff suffered the damages described above.

### Count Four (Against Defendant Briggs)
### Assault and Battery

93. Plaintiff hereby re-alleges Paragraphs 1 through 92 as though fully set forth herein.

94. Defendant Briggs committed assault and battery on Plaintiff by intentionally and unjustifiably using excessive force against Plaintiff on July 6. This use of force was not related to any legitimate penal purpose.

95. As a direct and proximate result of Defendant Briggs's actions, Plaintiff suffered the damages described above.

### Count Five (Against Defendants Kelsch, Smith, and Kelly)
### Assault and Battery

96. Plaintiff hereby re-alleges Paragraphs 1 through 95 as though fully set forth herein.

97. Defendants Kelsch, Smith, and Kelly committed assault and battery on Plaintiff by intentionally and unjustifiably using excessive force against Plaintiff on July 29. This use of force was not related to any legitimate penal purpose.

98. As a direct and proximate result of Defendants Kelsch, Smith, and Kelly's actions, Plaintiff suffered the damages described above.

### Count Six (Against All Defendants)
### Negligence

99. Plaintiff hereby re-alleges Paragraphs 1 through 98 as though fully set forth herein.

100. As jailers, all Defendants owed a duty of care to Plaintiff.

101. Defendant Briggs breached this duty of care by committing assault and battery on Plaintiff by intentionally and unjustifiably using excessive force against Plaintiff during the July 6 assault. This use of force was not related to any legitimate penal purpose.

102. Defendants Kelsch, Smith, and Kelly breached this duty of care by committing assault and battery on Plaintiff by intentionally and unjustifiably using excessive force against Plaintiff during the July 29 assault. This use of force was not related to any legitimate penal purpose.

103. Defendant Holmes breached this duty of care by being present while Defendants Kelsch, Smith, and Kelly maliciously and sadistically engaged in excessive force against Plaintiff, without cause or justification, during the July 29 assault, and yet encouraging the assault, and failing to take any steps to intervene or prevent the assault.

104. As a direct and proximate result of the actions described above, Plaintiff suffered the damages described above.

### Count Seven (Against Defendant Briggs)
### Wanton and Reckless Conduct

105. Plaintiff hereby re-alleges Paragraphs 1 through 104 as though fully set forth herein.

106. Defendant Briggs intentionally and unjustifiably used excessive force against Plaintiff during the July 6 assault. This use of force was not related to any legitimate penal

purpose.

107. Defendant Briggs knew or should have known there was a high degree of likelihood that Plaintiff would suffer a risk of death or grave bodily injury as a result of the assault, including the exacerbation of his injuries from the July 2 assault.

108. As a direct and proximate result of Defendant Briggs's actions, Plaintiff suffered the damages described above.

### Count Eight (Against Defendants Kelsch, Smith, and Kelly)
### Wanton and Reckless Conduct

109. Plaintiff hereby re-alleges Paragraphs 1 through 108 as though fully set forth herein.

110. Defendants Kelsch, Smith, and Kelly intentionally and unjustifiably used excessive force against Plaintiff during the July 29 assault. This use of force was not related to any legitimate penal purpose.

111. Defendants Kelsch, Smith, and Kelly knew or should have known there was a high degree of likelihood that Plaintiff would suffer a risk of death or grave bodily injury as a result of the assault, including a second nasal fracture and loss of the ability to breathe due to Defendant Kelsch placing Plaintiff in a chokehold.

112. As a direct and proximate result of Defendants Kelsch, Smith, and Kelly's actions, Plaintiff suffered the damages described above.

### Count Nine (Against Defendant Holmes)
### Wanton and Reckless Conduct

113. Plaintiff hereby re-alleges Paragraphs 1 through 112 as though fully set forth herein.

114. As a Captain at PCCF, Defendant Holmes owed a duty of care to Plaintiff.

115. Defendant Holmes breached this duty of care by being present while Defendants Kelsch, Smith, and Kelly maliciously and sadistically engaged in excessive force against Plaintiff, without cause or justification, during the July 29 assault, and yet deliberately failing to take any steps to intervene or prevent the assault, and in fact encouraging the assault to continue.

116. Defendants Holmes knew or should have known there was a high degree of likelihood that Plaintiff would suffer a risk of death or grave bodily injury as a result of the July 29 assault, including a second nasal fracture and loss of the ability to breathe due to Defendant Kelsch placing Plaintiff in a chokehold.

117. As a direct and proximate result of Defendant Holmes's actions, Plaintiff suffered the damages described above.

**Count Ten (Against All Defendants)**
**Intentional Infliction of Emotional Distress**

118. Plaintiff hereby re-alleges Paragraphs 1 through 117 as though fully set forth herein.

119. All Defendants intended to inflict emotional distress upon Mr. Silvestri, in retaliation for his efforts to expose police corruption. Alternatively, all Defendants knew or should have known that their actions would cause emotional distress to Plaintiff.

120. Defendants' actions were extreme, outrageous, and beyond the bounds of civilized decency.

121. Defendants' actions proximately caused Plaintiff to suffer severe emotional distress of such a nature that no reasonable person could be expected to endure it, including nightmares, post-traumatic stress disorder, and fear of further retaliation by law enforcement.

## Count Eleven (Against All Defendants)
### Negligent Infliction of Emotional Distress

122. Plaintiff hereby re-alleges Paragraphs 1 through 121 as though fully set forth herein.

123. All Defendants acted negligently in causing emotional distress to Plaintiff, by either engaging in excessive force against him, or knowingly failing to prevent the use of excessive force against Plaintiff.

124. Defendants' actions were the direct and proximate cause of Plaintiff's injuries as described above.

125. Defendants' actions directly and proximately caused Plaintiff to suffer severe emotional distress of such a nature that no reasonable person could be expected to endure it, including nightmares, post-traumatic stress disorder, and fear of further retaliation by law enforcement.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a) Money damages in compensation for the harm Plaintiff has suffered as a result of Defendants' violations of Plaintiff's rights under the United States Constitution, federal law, including the Fourteenth Amendment to the Constitution, and Massachusetts tort common law;

b) Punitive damages;

c) An award to Plaintiff of costs and attorney's fees; and

d) Any such other and further relief that this Court deems just and proper.

## JURY TRIAL DEMAND

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL ISSUES AND CLAIMS SO TRIABLE.

Dated: April 24, 2015

Respectfully submitted,
Mark Silvestri

By his attorneys,

/s/ Kelly M. Husid
Kelly M. Husid (BBO# 684516)
Brian C. Devine (BBO# 672233)
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts 02109
Tel: 617.570.1000
Fax: 617.523.1231
KHusid@goodwinprocter.com
BDevine@goodwinprocter.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

       I, Kelly M. Husid, hereby certify that the foregoing Second Amended Complaint, filed using the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 24, 2015.

                                                             /s/ Kelly M. Husid